IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID MARTIN CAMPBELL,          )
AIS #231287,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )          CASE NO. 2:10-CV-694-WC
                                )                [WO]
                                )
WARDEN WILLIE THOMAS, et al.,   )
                                )
          Defendants.           )

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by David Martin

Campbell ["Campbell"], an indigent state inmate, challenging the frequency within which

he is provided batteries for his hearing aids while confined at the Draper Correctional Facility

["Draper"].  *Complaint - Doc. No. 1* at 5.  Campbell argues that the defendants' actions

constitute deliberate indifference, deny him due process, deprive him of equal protection and

violate Title II of the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12131, *et seq*.

Campbell names Willie Thomas, the warden of Draper upon initiation of this case, Phyllis

Billups, an assistant warden for Draper at such time, and Correctional Medical Services, Inc.,

the medical care provider for the prison system at the time Campbell filed the complaint, as

defendants in this cause of action.[1]  Campbell seeks a declaratory judgment, injunctive relief and monetary damages.  *Complaint - Doc. No. 1* at 9-10.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Campbell's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as motions for summary judgment.  *Order of September 24, 2010 - Doc. No. 10*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

---

[1] Correctional Medical Services, Inc., is now known as Corizon, Inc.

material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motions for summary judgment, Campbell is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida*,

5

363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

6

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Campbell fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

### A. Relevant Undisputed Material Facts

Campbell is confined at Draper which utilizes the Staton Health Care Unit for provision of medical treatment to inmates as these facilities adjoin each other. Campbell suffers from major hearing loss and constant ear infections. *Exhibit 3 to the Medical Defendant's Special Report - Doc. No. 7-4* at 10. Campbell has "40 plus years of wearing hearing instruments" and has been provided hearing aids during his incarceration in the state prison system. *Id*. He has a standing order to report to the Staton Health Care Unit every ten days to receive new batteries for his hearing aids. *Exhibit 1 to the Medical Defendant's Special Report - Doc. No. 7-2* at 8. Under normal use conditions, the batteries provided by health care personnel to Campbell have a recommended usage life of more than ten days, generally fourteen days. The batteries have, on occasion, not lasted for the ten-day period

addressed in the standing order.  *Complaint - Doc. No. 1* at 6 ("The Correctional Medical

Services Staff assumes that each hearing aid batter[y] should last up to (14) fourteen days .

. . but [the batteries] are only good for about (7) to (10) days." ).  The batteries are maintained

at the Staton Health Care Unit and Campbell must be escorted by a correctional officer from

Draper to the health care unit to receive his batteries.  The standing order is directed to the

Draper Shift Office thereby allowing Campbell to merely report every ten days to the

appropriate correctional official for escort to the Staton Health Care Unit.  *Exhibit 1 to the*

*Medical Defendant's Special Report - Doc. No. 7-2* at 8.  If necessary, Campbell may request

batteries at more frequent intervals by submitting a sick call request identifying the nature

of his problem, i.e., failure of the hearing aid batteries, and receiving an appointment with

medical personnel at the health care unit for evaluation of his request.  Inmates at Draper are

routinely escorted to the Staton Health Care Unit for sick call appointments with medical

personnel.  Medical personnel, however, only issue orders/requests that inmates be sent from

Draper to the Staton Health Care Unit and are not responsible for ensuring that the inmates

report to correctional officials for escort to the health care unit.

**B.  Absolute Immunity for Individual Defendants on Constitutional Claims**

With respect to alleged constitutional violations committed by the individual

correctional officials named as defendants, these defendants are entitled to absolute immunity

from monetary damages.  Official capacity lawsuits are "in all respects other than name, . .

. treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A

8

state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity [with respect to the constitutional issues presented by Campbell].  Therefore, Alabama state officials are immune from [the plaintiff's deliberate indifference, due process and equal protection] claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, defendants Thomas and Billups are entitled to sovereign immunity under the Eleventh Amendment for the claims seeking monetary damages from them in their official capacities for alleged violations of Campbell's Eighth and Fourteenth Amendment rights.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## C.  The Fourteenth Amendment Claims

Campbell presents purely conclusory allegations regarding purported violations of his due process and equal protection rights as protected by the Fourteenth Amendment. *Complaint - Doc. No. 1* at 8 ("The defendants' delay in furnishing the plaintiff with new replacement batteries . . . [in the manner he deems appropriate is violative] of the Due

Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution.").  Neither of these alleged violations entitle Campbell to any relief.

Initially, the court finds that the complaint fails to set forth any claims which implicate the protections of the Due Process Clause of the Fourteenth Amendment.  *Cf. Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (merely labeling a claim as a due process violation is insufficient).  In addition, Campbell fails to present a claim of discrimination cognizable under the Equal Protection Clause.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed . . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' . . . nor does it require the State to 'equalize [prison] conditions.'"  *Ross v. Moffitt*, 417 U.S. 600, 611-12 (1974); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To proceed on a claim under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.

10

1986)." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact . . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on properly supported motions for summary judgment from the defendants, Campbell bears the burden of producing evidence which would be admissible at trial sufficient to show that the defendants provided more favorable treatment to other similarly situated individuals and acted in this manner due to intentional discrimination. *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249 (to preclude summary judgment, plaintiff must present significant probative evidence showing defendant provided more favorable treatment to similarly situated persons and did so as the result of

intentional discrimination); *E & T Realty Co. v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendant in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252.

Campbell fails to identify any similarly situated inmate who received differential favorable treatment from the defendants. Thus, Campbell's "equal protection claim necessarily fails . . . because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F. Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution . . . , this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently . . . . [T]here is *no* evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff . . . . The plaintiff has offered the Court nothing on which to base his equal protection claim. Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit."). Thus, Campbell is due no relief on his equal protection

claim.

### D.  The Deliberate Indifference Claim

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that . . . harmful acts [of prison medical personnel] were intentional or reckless.  *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate

indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show:  (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not,

14

while no cause for commendation, cannot under our cases be condemned as the infliction of

punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation

and internal quotations omitted) (To show deliberate indifference to a serious medical need,

a plaintiff must demonstrate that [the] defendants' response to the need was more than

"merely accidental inadequacy, negligence in diagnosis or treatment, or even medical

malpractice actionable under state law.").   Moreover, "as *Estelle* teaches, whether

government actors should have employed additional diagnostic techniques or forms of

treatment 'is a classic example of a matter for medical judgment' and therefore not an

appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at

1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.  *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim alleges a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay."  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).  In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment [on his medical condition] to succeed."  *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 2515 n.9 (2002); *Mann*, 588 F.3d at 1307.

    1. <u>Liability of Correctional Defendants in Their Individual Capacities</u>.   It is clear

from the complaint that Campbell seeks to hold defendants Thomas and Billups liable for

their failure to intervene regarding the frequency within which he is provided hearing aid

batteries by health care professionals. *Complaint - Doc. No. 1* at 3. The claim made against

defendants Thomas and Billups entitles Campbell to no relief as

> [t]he law does not impose upon correctional officials a duty to
> directly supervise health care personnel, to set treatment policy
> for the medical staff or to intervene in treatment decisions where
> they have no actual knowledge that intervention is necessary to
> prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550
> F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be
> brought against managing officers of a prison absent allegations
> that they were personally connected with the alleged denial of
> treatment). Moreover, "supervisory [correctional] officials are
> entitled to rely on medical judgments made by medical
> professionals responsible for prisoner care. *See, e.g., Durmer v.
> O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849
> F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County,
> Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

To the extent Campbell seeks relief from defendants Thomas and Billups due to their

positions as warden and assistant warden for the decisions of prison medical personnel,

assuming *arguendo* Thomas and Billups exerted some authority over the manner in which

those persons responsible for the provision of medical care rendered such decisions, the law

is well settled "that Government officials may not be held liable for the unconstitutional

conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]

. . . . *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A

17

public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for medical treatment provided to Campbell could attach to defendants Thomas and Billups only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions

18

. . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Campbell, however, has presented no evidence, nor can the court countenance the existence of any evidence, which would create a genuine issue of disputed fact with respect to the allegation of deliberate indifference by defendants Thomas and Billups. The record is devoid of evidence indicating that Thomas and Billups personally participated in or had any involvement, direct or otherwise, with the determination of the manner or time in which Campbell should receive batteries for his hearing aids; rather, it is undisputed that Thomas and Billups did not participate in the decisions regarding provision of batteries to Campbell. The evidentiary materials before the court likewise demonstrate that medical personnel made the challenged decisions in accordance with their professional judgment after assessment of all relevant factors.

In light of the foregoing, defendants Thomas and Boyd can be held liable for decisions of medical personnel only if their actions bear a causal relationship to the purported violation of Campbell's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Thomas and Boyd, Campbell must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so . . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Boyd] directed the [facility's health care staff] to act unlawfully, or knew that

19

[the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Campbell has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Thomas and Billups directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Campbell has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Thomas and Billups failed to take corrective action; instead, the undisputed medical records indicate that Campbell consistently received batteries in accordance with the protocol set forth by medical personnel, i.e., he possesses a standing order to receive hearing aid batteries every ten days and has continuous access to the sick call process through which he could obtain batteries on a more frequent basis.  Finally, the undisputed evidentiary materials submitted by the defendants demonstrate that the challenged course of action did not occur pursuant to a policy enacted by the correctional defendants.  Thus, the requisite causal connection does not exist in this case and liability does not attach to Thomas or Billups under the custom or policy standard as such is not warranted.  *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Summary judgment is therefore due to be granted in favor of defendants Thomas and Billups on the deliberate indifference claim

20

lodged against them.

   2. The Medical Defendant - Correctional Medical Services, Inc. ["CMS"].  Campbell asserts that medical personnel have acted with deliberate indifference to his hearing impairment because they will not send his hearing aid batteries via the pill call nurse to Draper on a daily basis so that he may obtain them upon request and have also refused to issue a standing order allowing him to receive the batteries at a more frequent interval than every ten days.  Campbell asserts that on some occasions his batteries have only lasted for seven to ten days and he has not been able to immediately obtain batteries on these occasions as the batteries are not available at the pill call window at Draper, he must wait to receive an appointment through the sick call process and officer escorts to the Staton Health Care Unit may be delayed for matters related to institutional security.

   The evidentiary materials filed by the medical defendant address the allegations made by Campbell.  A thorough review of these documents demonstrates that the affidavit submitted in support of the report is corroborated by the objective medical records compiled contemporaneously with the treatment provided to Campbell regarding the instant claim of deliberate indifference.  Michele Sagers-Copeland, a registered nurse who serves as the Health Services Administrator for both Staton and Draper, provides the following explanation of the treatment afforded Campbell.

   As the Health Services Administrator at the Draper and Staton Correctional Facilities, I am aware of the hearing impairment of Mr. Campbell. Since his incarceration at Draper, Mr. Campbell has been seen and treated on

21

multiple occasions due to his hearing impairment.  The medical records suggest that Mr. Campbell has a history of forty-plus years of wearing hearing instruments.

Mr. Campbell, during his incarceration, has been provided with bilateral hearing aids.

Mr. Campbell [was] provided with new hearing aids [in March of 2010], and Mr. Campbell's hearing is monitored on an as-needed basis by the medical staff at the Draper Correctional Facility [through the sick call process].

Mr. Campbell has been receiving batteries for his hearing aids since August 2009, from the Health Care Unit.  He has received batteries for his hearing [aids] at the Health Care Unit continuously since August 2009.

There is a standing order that Mr. Campbell is to come to the Health Care Unit every ten (10) days to receive batteries for his hearing aids. Batteries are always available at the Health Care Unit for Mr. Campbell's devices.

Mr. Campbell is provided medical attention and assistance regarding his hearing impairment when seen at the health care unit.  Mr. Campbell is provided bilateral hearing aids with the standing order to attend the Health Care Unit every ten (10) days to have his batteries replaced.  Correctional Medical Services, Inc. has no control over inmates being able to make it to the Health Care Unit.

Mr. Campbell has received medical treatment with regards to his hearing impairment at the Draper Correctional Facility and his health care at [no] time has been intentionally delayed or denied.

*Attachment 1 to the Medical Defendant's Special Report (Affidavit of Michele Sagers-Copeland) - Doc. No. 7-1* at 2-4.  If needed more frequently, Campbell has been instructed not to file a grievance but to instead submit a sick call request regarding the need for new hearing aid batteries.  *Attachment 1 to Plaintiff's January 7, 2011 Response - Doc. No.* 27-1 at 5, 7.

In this case, Campbell complains that defendant CMS failed to provide him batteries for his hearing aids each time his batteries failed prior to the ten-day interval ordered for

22

replacement of the batteries.  Campbell does not name any individual health care professional as a defendant; instead, he seeks to hold CMS liable for the conduct of unnamed medical personnel.

> "[W]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983.  *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).  "[L]iability under § 1983 may not be based on the doctrine of respondeat superior."  *Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)(en banc).

*Craig v. Floyd Cnty, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

Because CMS is a private medical contractor performing a traditional state function of providing health care to inmates, CMS is the functional equivalent of a municipality. Consequently, the court evaluates Campbell's claim against CMS as it would evaluate the claim against a municipality.  The law is well-established that a municipality cannot be held liable under a theory of respondeat superior or vicarious liability.  "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." *Belcher v. Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) quoting *Campbell v. Hayes*, 957 F.2d 548, 849 (11th Cir. 1992).  *See also Cook v. Sheriff of Monroe Cnty, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

> [R]espondeat superior is not a valid theory of liability for private contractors employed by a state, Street [*v. Corrections Corp. of Am*.,] 102 F.3d [810,] 818 [(6th Cir. 1996)].  Indeed, "every circuit to consider the issue" has extended "to private corporations as well" the rule that a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis.  *Id*.  That [the defendant] is a professional limited liability company makes no difference with respect to respondeat superior liability under section 1983.  *See e.g., Craig v. Floyd Cty, Ga*, 643 F.3d 1306, 1310 (11th Cir. 2011) (finding that section 1983 claims against limited liability company cannot be based on respondeat superior.)

*Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

Thus, the plaintiff cannot state a § 1983 claim against CMS based on the actions of its employees.  Because CMS cannot be held directly liable, to survive summary judgment, Campbell must also demonstrate that CMS had a policy or custom that represents official policy that resulted in the delay or denial of adequate medical care to him.  *See Savoie*, *supra*.  *See also Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir. 1983).  CMS's liability is dependent upon Campbell establishing that any constitutional violation he suffered was the result of a policy or custom of CMS.  "[O]nly when a 'policy or custom' of the municipality inflicts the injury does § 1983 liability exist."  *Cook*, 402 F.3d at 1116; *Buckner*, 116 F.3d at 452.  *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

> Supervisory liability under 1983 occurs only when "the supervisor personally participates in the alleged unconstitutional conduct or there is a causal connection between the acts of the supervising official and the alleged constitutional deprivation." [*Cottone v. Jenne*, 362 F.3d 1352, 1360 (11th Cir. 2003)]  A causal connection may be established . . . when "a supervisor's custom or policy results in deliberate indifference to constitutional rights", . . .

24

*Belcher*, 30 F.3d at 1396.  *See also Buckner*, 116 F.3d at 452.  Moreover, the Eleventh

Circuit has stated that "[t]o establish a policy or custom, it is generally necessary to show a

persistent and wide-spread practice."  *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999).

The Eleventh Circuit has defined "custom" to mean "a practice that is so settled and

permanent that it takes on the force of law." *Id.*

To avoid summary judgment, Campbell must present sufficient evidence creating a

genuine dispute of material fact that CMS has a policy or custom of delaying or denying

adequate medical care that resulted in deliberate indifference to his constitutional rights.

This he has failed to do.  Campbell does not allege, and he presents no evidence, linking his

claims to any official policy or custom of CMS.  Instead, Campbell acknowledges that he

challenges the time interval contained in a standing order issued by a nurse and the decisions

of individual medical personnel refusing to provide the pill call nurse batteries for dispensing

at Draper during daily pill call.  Thus, Campbell has not demonstrated that any injury he may

have suffered was ascribable to a CMS policy or custom.  Accordingly, the court concludes

that Campbell has failed to offer sufficient evidence which would allow a jury to conclude

that CMS has a policy or custom of failing to provide hearing aid batteries to inmates in a

timely manner.  Summary judgment is due to be granted in favor of defendant Correctional

Medical Services, Inc.[3]

---

[3] Under the circumstances of this case, the court likewise finds that the course of treatment
undertaken by health care personnel did not violate Campbell's constitutional rights.  The medical care

### E.  The ADA Claim

Campbell alleges that he is disabled and the "delay [in] supplying new replacement batteries [therefore] violates the Americans with Disabilities Act." *Complaint - Doc. No. 1* at 8.  "Under Title II of the ADA, a 'qualified individual with a disability' cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity. *See* 42 U.S.C. § 12132." *Flournoy v. Culver*, ---- Fed. Appx. ----, 2013 WL 4256026, at *1 (11th Cir. 2013).  Title II of the ADA applies to inmates confined in state correctional facilities.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1081 (11th Cir. 2007) (It is well settled law "that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity provided in state prison by reason of his disability.").

1.  <u>Claim for Damages from Defendants Thomas and Billups in Their Individual Capacities</u>.  To the extent Campbell seeks monetary damages from the defendants in their

---

Campbell received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  Campbell at all times had access to medical care for his hearing impairment and retained the ability to seek assistance from health care officials in obtaining hearing aid batteries whenever his batteries failed. It is also evident that medical personnel rendered treatment to Campbell and allowed him replacement batteries in accordance with their professional judgment.  Moreover, Campbell has failed to present any evidence which indicates that medical personnel knew that the manner in which they provided him access to batteries created a substantial risk to Campbell's health and that, with this knowledge, consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that health care personnel acted with deliberate indifference.

individual capacities for an alleged violation of the ADA, he is entitled to no relief as Title II of the ADA does not provide for individual capacity liability. *Badillo v. Thorpe*, 158 Fed. Appx. 208, 211-12 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) ("[T]he ADA does not provide for individual liability . . ."); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same).   Thomas and Billups are therefore entitled to summary judgment on Campbell's ADA claim for monetary damages lodged against them in their individual capacities.

2.  <u>Request for Damages Against Defendants in Their Official Capacities</u>.  Campbell alleges that he is hearing impaired thereby rendering the delay in providing batteries for his hearing aids a violation of Title II of the ADA.   The defendants adamantly deny this allegation. *Correctional and Medical Defendants' Response - Doc. No. 51*.  "[I]nsofar as Title II of the ADA creates a private cause of action for damages against the States for conduct that ***actually*** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Georgia*, 546 U.S. at 159.  (emphasis in original).  Consequently, with respect to the claims seeking relief from CMS and the individual defendants in their official capacities and as such claims are "in all respects . . . a suit against the entity[,]" *Graham*, 473 U. S. at 166, the court must determine whether Campbell has a claim viable under the ADA.

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.).   A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."   § 12131(2).   The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," §12131(1).

*Georgia*, 546 U.S. at 153-54.

    "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted). This standard derives from the ADA's language, stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual." 42 USC 12112(a)....

    For the first element of an ADA claim, a plaintiff qualifies as disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities ...; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. §12102(2).

    Major life activities are further defined by the Equal Employment Opportunity Commission ("EEOC") as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Cash,* 231 F.3d at 1305. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Id.* at 482-83, 119 S.Ct. at 2146-47....

    "[T]he ADA requires those claiming the Act's protection ... to prove a

disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 691-92, 151 L.Ed.2d 615 (2002) (quotations omitted). The Supreme Court has held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of ***central importance*** to most people's daily lives. The impairment's impact must also be permanent or long term." *Id.* at 198, 122 S.Ct. at 691 (emphasis added) (citation omitted).

*Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263-1264 (11th Cir. 2007) (emphasis in original).

Assuming that Campbell's hearing loss constitutes a disability under the ADA, Campbell has still failed to establish a prima facie ADA claim. The record is devoid of evidence indicating that Campbell was subjected to unlawful discriminatory conduct by the defendants due to this disability. Specifically, Campbell does not allege nor does he provide any evidence that the defendants made a decision to exclude him from services, programs or activities for which he qualified because of his hearing impairment.

In light of the foregoing, Campbell's ADA claim provides no basis for relief against CMS or the correctional defendants in their official capacities as representatives of the State. Thus, the defendants are entitled to summary judgment on the ADA claim. Because Campbell cannot show an ADA or constitutional violation, the court need not undertake analysis of whether Title II is a valid abrogation of sovereign immunity from money damages in the circumstances presented by Campbell's case. *See Georgia*, 546 U.S. at 159 (remanding for determination of what conduct violated Title II, whether that conduct also

29

violated the Fourteenth Amendment, and "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid").

## IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that:

1.  The defendants' motion for summary judgment be GRANTED;

2.  Judgment be GRANTED in favor of the defendants;

3.  This case be DISMISSED with prejudice; and

4.  No costs be taxed herein.

A separate Final Judgment will accompany this Memorandum Opinion.

Done this 25th day of September, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE